JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| PAUL SAPAN,<br><br>        Plaintiff,<br><br>    v.<br><br>PINNACLE SECURITY CA GP, INC., a Utah Corporation, PINNACLE SECURITY, LLC, A Utah Limited Liability Company, BRIAN J. KARREN, an individual, AND JOSEPH PRETLOW, an individual,<br><br>        Defendants. | Case No.: SACV 15-00822-CJC(ASx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

**I. INTRODUCTION**

    Plaintiff Paul Sapan filed this Telephone Consumer Protection Act (TCPA) suit against defendants Pinnacle Security CA GP, Inc., Pinnacle Security, LLC, (together

"Pinnacle"), and the alleged owners of Pinnacle, Brian Karren and Joseph Pretlow, based on marketing calls he received on Pinnacle's behalf.  Mr. Sapan voluntarily dismissed Mr. Karren and Mr. Pretlow from the case under Rule 41(a)(1). (Dkt. 10, 19.)  In response to this Court's order to show cause regarding dismissal for lack of prosecution, (Dkt. 11), Sapan filed an application for an entry of default against Pinnacle Security CA GP, Inc. and Pinnacle Security, LLC, (Dkt. 13).  The Clerk of Court entered default against both Pinnacle entities and this application for default judgment followed.  Sapan requests a judgment in his favor amounting to $16,500 and $3619.65 in attorney's fees and costs.  For the reasons discussed below, the Court GRANTS Mr. Sapan's motion for default judgment and the full award of costs and fees, but reduces the damages award.[1]

## II. BACKGROUND

Sapan is alleging that he received a total of seven calls from Pinnacle that violate the TCPA.  Three of those calls were initiated by a human being and four of the calls were prerecorded "robocalls."

Sapan asserts that his phone number that received the Pinnacle calls has been on the federal government's national do-not-call registry since December 23, 2007 and offers as evidence an email to him from the address Verify@DonotCall.gov confirming that fact. (Dkt. 21-5.)  The TCPA provides a private right of action for violations of regulations promulgated by the FCC concerning the national do-not-call registry.  47 U.S.C. § 227(c)(5). FCC regulations make it unlawful for any person to "initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for November 9, 2015 at 1:30 p.m. is hereby vacated and off calendar.

her telephone number on the national do-not-call registry of person who do not wish to receive telephone solicitations." 47 C.F.R. § 64.1200(c)(2).

The TCPA also makes it unlawful for any person to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the Commission . . . ." 47 U.S.C. § 227(b)(1)(B).

Sapan alleges that the live calls he received violated the regulation concerning calls to the national do-not-call registry and that the robocalls he received violated both the statutory provision barring unsolicited robocalls and the do-not-call registry regulation. Sapan has submitted as an exhibit a log he took documenting each of the seven calls. (Dkt. 21-4.) It documents the following calls:

1. 7/18/11, call from 603-214-3653: Sapan received a robocall about alarm services. He pressed "1" (for more information) and was connected to a person named Brian, who asked if Sapan was interested in an alarm system for his home. Sapan said he was interested and, in Sapan's words, Brian "said that normally he would transfer me but all of his agents were busy. He said that he would have someone call me back."

2. 7/21/11, 2:59 p.m., call from 888-211-9699: Sapan received a live call from someone named Brian Pyner of Pinnacle Security pitching alarm systems. Sapan "[t]old him I wasn't interested and hung up."

3. 7/21/11, 3:03 p.m., call from 888-211-9699: Four minutes after the prior call, Sapan received a live call from Brian Pyner of Pinnacle Security. "Called back because he thought we got disconnected. Told him I was on the do not call list and he hung up."

4. 12/17/12, 11:40 a.m., call from 802-488-3060: Sapan received a robocall for a free home alarm system. He pressed "1" and was connected to Carmen of Security Solutions. She transferred Sapan to Corey of Pinnacle Security and Sapan told him not to call him.

5. 12/17/12, 2:03 p.m., call from 310-856-9046: Sapan received a call from Jordan of Pinnacle Security calling to follow up. Sapan told him he was not interested.

6. 1/21/13 call from 802-488-3064: Sapan received a robocall for a free alarm system on his voicemail and saved most of the message.

7. 1/22/13 call from 802-488-3064: Sapan received a missed call notification and believes it is a robocall because it came from the same number as the previous call.

In addition to the call log he prepared, Sapan has submitted as an exhibit redacted phone records from Vonage, his service provider, showing the date, time, and duration of the offending calls. (Dkt. 21-6.)

On May 27, 2015, Sapan filed a five-count complaint against Pinnacle Security CA GP, Inc., Pinnacle Security, LLC, Karren, and Pretlow, and asserted that Karren and Pretlow were the owners of Pinnacle. (Dkt. 1, Complaint, ¶ 41.) In addition to violations of the two TCPA provisions discussed above, he pled trespass to chattel, an unfair business practices claim under California Civil Code § 17200, and a violation of California Civil Code § 1770(a)(22)(A) (which requires that recorded messages disseminated by telephone be introduced by a live, natural voice and that consent to play the message be obtained). For the purposes of default judgment, Sapan is not pursuing the trespass to chattels claim or the § 17200 claim, and is only pursuing the § 1770 claim insofar as it entitles him to attorney's fees under California Civil Code § 1780(e).

### III. ANALYSIS

**A. Adequacy of Service of Process**

In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested."

*Bostik, Inc. v. J.E. Higgins Lumber Co.,* No. 12-4021 SC, 2013 WL 312074, at *1 (N.D. Cal. Jan. 10, 2013). Here, Sapan has filed declarations from a process server, testifying that of the summons and complaint was effected on an individual named Abby Park with respect to Pinnacle Security CA GP, Inc., (Dkt. 8.), and Pinnacle Security, LLC, (Dkt. 9). Sapan's attorney has submitted a declaration indicating that Abby Park is designated by law to accept service on behalf of both Pinnacle entities. (Dkt. 21-2 ¶ 4.) Sapan's counsel has also submitted an affidavit of service attesting that notice the application for default judgment and the accompanying briefing and declarations were served on both Pinnacle entities by mail to their last known address, as required by Local Rule 55-2 and Rule 5(b)(2)(C) of the Federal Rules of Civil Procedure. (Dkt. 21 at 4.) Based on these sworn statements, the Court concludes that Sapan has established proper service.

### B. Merits of the Motion for Default Judgment

As noted above, the Clerk entered default against Pinnacle on August 18, 2015. (Dkt. 17.) After entry of default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A court may consider the following factors in exercising such discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.1986). Because default has already been entered in this case, the Court must construe as true all of "the factual allegations of

the complaint, except those relating to the amount of damages." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Turning to factor one, there would be prejudice to Sapan if his motion for a default judgment were to be denied—he would have no remedy. *Righetti v. Authority Tax Services, LLC*, 14-cv-146, 2015 WL 4089799, at *2 (July 6, 2015). The TCPA's provision of an award for statutory damages further supports the conclusion that Sapan will be prejudiced and Pinnacle's conduct would not be properly deterred absent the entry of default judgment. *Id.*

Factors two and three—the merits of the claims and the sufficiency of the complaint—also weigh in favor of issuing a default judgment. Paragraphs 8 to 37 of Sapan's complaint contains allegations of four specific violations of 47 U.S.C. § 227(b)(1)(B), the TCPA's prohibition on initiating a telemarketing call to a residential line using an artificial or recorded voice. (Dkt. 1, Compl., ¶¶ 8-37, 44-44.) His call log and Vonage phone records provide meaningful evidentiary support for his allegations. Sapan has also pled that all seven of the calls violate 47 C.F.R. § 64.1200(c)(2), the TCPA-related regulation prohibiting calling numbers on the do-not-call list. (Dkt. 1, Compl., ¶¶ 8-37, 49-54.) Sapan also adequately pleads a violation of California Civil Code § 1770(a)(22) in his complaint, (Compl. ¶¶ 55-60), and provides evidentiary support for the claim, given the statute's requirement that robocalls be introduced by a live speaker and Sapan's allegations and evidence that Pinnacle robocalled him on four occasions. Sapan also correctly indicates that California Civil Code § 1780(e) indicates that the court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed under § 1770. *See also* Cal. Civ. Code § 1770(a).

With respect to the fourth *Eitel* factor, the sum of money at stake in this action is particularly appropriate for resolution on default judgment because TCPA damages are

fixed by statute. *See Heidorn v. BDD Marketing & Management Co., LLC*, 13-cv-00229, 2013 WL 6571629, at *9 (N.D. Cal. Aug. 19, 2013) (finding that the availability of statutory damages under the TCPA "weighs in favor of entry of default judgment" under the fourth *Eitel* factor).

The Fifth *Eitel* factor—the possibility of a factual dispute—is more equivocal. The Court recognizes that there could be a question of fact about whether Sapan's interaction with "Brian" on July 17, 2011 included his consent to the July 21, 2011 call, or whether the second call on July 21, 2011 that was made minutes after the first constituted violations of the TCPA. Sapan has, however, offered phone records, documentation of his inclusion in the do-not-call list, and other information that supports his central claims. And he has also provided enough information in his pleadings and declaration to make a prima facie case even with respect to claims that could be contested. With respect to the July 17 call, though Sapan initiated contact with a live operator, feigned interest, and was told that someone would call, his pleadings and declarations indicate that he "did not authorize to be called back." (Dkt. 21-3, Sapan Decl., ¶ 22; Dkt. 1, Compl., ¶ 17.) And though the caller on the July 21 calls told Sapan that he initiated the second call minutes after the first because he thought that he and Sapan had been disconnected, Sapan's pleadings and declaration indicate that before hanging up the phone at the end of the first call, he told the Pinnacle employee that he was not interested. (Dkt. 23-1, Sapan Decl. ¶ 24; Dkt. 1. Compl. ¶19.)

The sixth *Eitel* factor favors default judgment because there is no indication that Pinnacle's default was due to excusable neglect. The seventh factor likewise favors the entry of default judgment: while public policy favors decisions on the merits, *Eitel*, 782 F.2d at 1472, Pinnacle's choice not to defend this action renders a decision on the merits "impractical, if not impossible." *PepsiCo Inc. v. California Security Cans*, 238 F. Supp.

2d 1172, 1177 (C.D. Cal. 2002). The Court concludes that the *Eitel* factors weigh in favor of granting default judgment.

**C. Damages, Costs, and Attorneys' Fees**

Once a court concludes that default judgment is appropriate, it must determine what damages or other relief is warranted. Plaintiffs carry the burden of proving up their damages and requests for other relief. *Bd. of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). Here, the TCPA provides a private right of action for actual monetary loss or statutory damages of "up to $500 in damages" for each violation of the TCPA or its accompanying regulations at issue here. 47 U.S.C. § 227 (b)(3)(B), (c)(5)(B).

Sapan is pursuing statutory damages rather than damages for actual monetary loss. He asserts that because the four robocalls violated both the TCPA's prohibition on unsolicited robocalls under § 227(b) and the regulations concerning the national do-not-call registry promulgated under § 227(c), each of those calls constitutes two violations of the TCPA, each to be awarded damages separately. The Court rejects this argument based on the language of § 227(c)(5), which permits a person who has "received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" to bring "an action to recover for actual monetary loss from such a violation." This appears to indicate that each *call* constitutes a single violation of the TCPA.

Both § 227(b)(3) and § 227(c)(5) contain language indicating that "[i]f the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under

subparagraph (B) of this paragraph." 47 U.S.C.A. § 227.  Sapan argues that here "willfully or knowingly" made does not rise to the level of *scienter*, or knowledge of the wrongness of the act, merely that the caller deliberately and intentionally meant to call the third party.  As one court has recently noted, "a split in authority exists regarding what qualifies as knowing or willful conduct warranting trebling." *Roylance v. ALG Real Estate Service, Inc.*, No. 5:14-CV-02445-PSG, 2015 WL 1522244, at *10 (N.D. Cal. Mar. 16, 2015).  "Some courts have held that a defendant must know that the making of the call violates the TCPA, while others have held that a defendant need only know that the call is being made." *Id.*  The latter definition has some support in the caselaw and in other FCC-related statutes.  As one court noted, "[w]hile the TCPA does not define willful, the Communications Act of 1943, of which the TCPA is a part, defines willful as 'the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation.'" *Sengenberger v. Credit Control Servs., Inc.*, No. 09C2796, 2010 WL 1791270, at *6 (N.D. Ill. May 5, 2010).  Nonetheless, this reading of the knowledge standard is puzzling: if simple knowledge that one was making a call were sufficient to access enhanced damages, they would be available in nearly every case.

Here the Court need not determine which standard for "willfully and knowingly" applies, as it sees no need to award enhanced damages in either case.  The award of enhanced damages is left to the courts' discretion, and this Court determines that damages of $500 per call is sufficient to both compensate Mr. Sapan for the seven calls he received from Pinnacle, and to discourage Pinnacle from engaging in such behavior in the future.  Mr. Sapan will be awarded $3,500 in damages under the TCPA (7 calls at $500 per call).

Mr. Sapan's attorney has submitted a declaration seeking to recover litigation costs for the $400 filing fee, $195 for service fees, and $104.65 for chambers copies service (7 x $14.95). The Court will award those costs, which total $699.65.

Mr. Sapan's attorney also seeks attorneys' fees under California Civil Code § 1780(e) (in connection with the § 1770(a)(22) violation), and has submitted an itemized invoice indicating that he has spent 7.3 hours working on this case. (Dkt. 21-7.) His time is tracked to the tenth of an hour and each entry is clearly described. The Court concludes that 7.3 hours is a reasonable amount of time to spend prosecuting Mr. Sapan's case. The attorney's proposed rate of $400 per hour is appropriate here. *See, e.g., Nguyen v. HOVG, LLC*, No. 14CV837, 2015 WL 5476254, at *2 (S.D. Cal. Sept. 15, 2015) (citing 2010 statistics indicating that the average hourly rate for a consumer attorney with 6-10 years of experience in California was $387). Accordingly, the total attorneys' fee award is $2920.

## V. CONCLUSION

Plaintiff's motion for default judgment is GRANTED. The court awards $3,500 in damages, $699.65 in costs, and $2920 in attorneys' fees.

DATED:   November 6, 2015

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE